## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **LYNDA JENKINS and D.D. and K.D.,** | ) | |
| **minors, by and through their mother,** | ) | |
| **KIMBERLY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV827SNLJ** |
| | ) | |
| **SAINT LOUIS COUNTY, ET. AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Plaintiffs have filed this multicount §1983 and state law action arising from an alleged unlawful detention and arrest on August 5, 2009. Plaintiffs claim that defendant J. Crancer, a St. Louis County police officer, used excessive force when he unlawfully detained and arrested the plaintiffs while they were at the St. Louis County Justice Center waiting to visit a relative incarcerated at the facility. In their first amended complaint, plaintiffs assert federal constitutional claims under §1983 against defendant J. Crancer for excessive force, false arrest and "illegal imprisonment" (Counts I, V and VI); state law claims against defendant J. Crancer for excessive force and assault and battery (Counts II and IV); and federal constitutional claims under §1983 against defendant St. Louis County (hereinafter referred to as County) for maintaining unconstitutional policies and deliberately indifferent to the plaintiffs' constitutional rights as to the use of excessive force and unlawful detention and/or arrest; for failure-to-train, supervise and/or monitor its police officers; failure to investigate and act upon citizens'

complaints as to police misconduct; and for "illegal imprisonment" (Counts III and VI).[1]  This

matter is before the Court on the defendant County's motion for summary judgment [32], filed

August 25, 2011.  Responsive pleadings have now all been filed and this matter is ripe for

disposition.  This cause of action is currently set on the Court's jury trial docket of December 5,

2011.

The appropriate standard for consideration of all motions for summary judgment is as

follows:

> "Summary judgment is proper if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is
> no genuine issue as to any material fact and that the movant is
> entitled to judgment as a matter of law.  The movant bears the
> initial responsibility of informing the district court of the basis for
> its motion, and must identify those portions of the record which it
> believes demonstrate the absence of a genuine issue of material fact.
> If the movant does so, the nonmovant must respond by submitting
> evidentiary materials that set out specific facts showing that there is
> a genuine issue for trial.  On a motion for summary judgment, facts
> must be viewed in the light most favorable to the nonmoving party
> only if there is a genuine dispute as to those facts.  Credibility
> determinations, the weighing of the evidence, and the drawing of
> legitimate inferences from the facts are jury functions, not those of
> a judge.  The nonmovant must do more than simply show that there
> is some metaphysical doubt as to the material facts, and must come
> forward with specific facts showing that there is a genuine issue for

---

[1]The plaintiffs' first amended complaint is extremely unclear as to the nature and the jurisdictional basis of the claims as contained in each count. Each count simply has a generic title and incorporates the plaintiffs' factual allegations.  For example, Count I is simply entitled "**Count I: 42 U.S.C. Sec. 1983 Against Defendant Crancer**" and fails within the body of the count to denote whether this is a claim for excessive force or a Fourth Amendment unlawful detention and/or arrest claim.  Count II is similar in that it simply states "**Missouri Constitutional Claims**" against defendant Crancer but fails to identify within the count what "constitutional claims" are being asserted within the count.  Finally, Count V is for "**False Arrest**" but fails to state whether this is a §1983 claim for false arrest or a state claim for false arrest. The same goes for Count VI - **False Imprisonment**. The Court is making its best guess as to whether plaintiffs' claims are federally based or state based  In the future, plaintiffs' counsel shall more clearly set out the claims for relief as required under Rules 8 and 10 Federal Rules of Civil Procedure.

trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

Torgerson v. City of Rochester, 643 F.3d. 1081, 1085 (8th Cir. June 1, 2011)( internal citations and quotations omitted); *see also*, Jackson v. United Parcel Service, Inc., 643 F.3d. 1031, 1042 (8th Cir. 2011)(*citing* Torgerson*, supra.*).

As an initial matter, the Court notes that in their response, the plaintiffs concede that they cannot maintain their Count VI "false imprisonment" claim against defendant County.  Plaintiffs' Memorandum in Opposition [37], pg. 1.  Thus, the Court deems plaintiffs to have abandoned their claim for "false imprisonment" (whether it be a §1983 municipal liability claim or a state-law claim) as contained in Count VI against defendant County and will dismiss this claim with prejudice.

The Court further notes that the plaintiffs have not actually objected to any of the defendant County's statement of uncontroverted facts [34] but instead simply adds a caveat to some of the statements: "Plaintiff agrees with this statement but notes that it is irrelevant, as Defendant Crancer, as presumably all other police officers in St. Louis County, has received no training regarding the arrest of and application of force to minors. *See*, Plaintiff's **[sic]** Facts, below, and Plaintiff's **[sic]** legal memorandum, filed herewith."  This is not a proper response under Local Rule 4.01(E).  A party cannot both agree and disagree with a statement by simply calling such statement "irrelevant" and citing generally to its own factual assertions and legal memorandum.  Thus, the Court deems all material facts as contained in the defendant County's

3

statement of uncontroverted facts [34] admitted wherein a proper denial was not made or a denial was made without proper citation to the evidentiary record as required by Local Rule 4.01(E)[2].

As for the plaintiffs' statement of additional material facts [36], the Court finds that these "additional facts" focus almost entirely on the actions of defendant J. Crancer and do not address the matters raised by the instant summary judgment motion.  In any case, if the Court finds any of these "additional material facts" to be relevant to the matters raised in the instant summary judgment motion, the Court will consider same and give it the weight it deems appropriate.

The Court makes the following findings of fact based upon the undisputed material facts as set forth by the defendant and the facts which are supported by the parties' evidentiary record before this Court.

On or about August 5, 2009 the plaintiffs were at the St. Louis County Justice Center waiting to visit their incarcerated brother.  A confrontation ensued between the plaintiffs and defendant J. Crancer resulting in the handcuffing and arrest of the plaintiffs. At the time of the alleged incident, defendant Crancer was employed by defendant County as a police officer and was working security detail at the St. Louis County Justice Center. Defendant County's Exhibit [33-6] - Deposition of defendant J. Crancer, pg. 15.

Defendant Crancer graduated from the St. Louis County and Municipal Police Academy (Police Academy) in 1991.  Crancer Deposition, pgs. 11-12; Defendant County's Exhibit [35-A]. Crancer's training at the Police Academy lasted four (4) months and included approximately 640 hours of training in 13 blocks of instruction. Defendant County's Exhibit [33-2] - Affidavit of R

---

[2]For example, Defendant County's Fact Statement #19 avers: "St. Louis County reviews its police officers' performance, including any documented violations of Department General Orders, every six months.  *Campbell depo. p. 35, ll. 9-20.*".  Plaintiffs respond as follows: "Deny. *See* Plaintiff's **[sic]** facts below.".  This is an improper response and/or denial under this Court's Local Rules.

(Richard) K. Lawson.  The 13 blocks of instruction were tested through ten (10) academic examinations along with three (3) practical examinations for Defensive Tactics, Firearms and Driver Training.  Lawson Affidavit.  The Police Academy curriculum is taught through classroom, practical skills and hands-on scenario training.  Lawson Affidavit.

In 1991, defendant Crancer had approximately 38 hours of instruction in Constitutional law, which includes the law concerning the detention and arrest of individuals.  Defendant County's Exhibit [33-9], pgs. 28-29; Lawson Affidavit.  Defendant Crancer had approximately 48 hours of instruction in defensive tactics, which includes instruction on the use of force and how to properly apply handcuffs.  Lawson deposition, pg. 29; Lawson Affidavit.  The Police Academy curriculum also included on-the-job training.  Lawson Affidavit.

Presently, the Police Academy has 41 hours of instruction on Constitutional law and 82 hours of instruction on defensive tactics.  Lawson Affidavit.

Police Academy recruits are graded on their performance at the Police Academy and must receive a minimum average score of 70 in each of the 13 blocks of instruction to graduate. Lawson Affidavit.

Training at the Police Academy is done pursuant to the standards established by the Peace Officers Standards & Training Program (POST), part of the Missouri Department of Public Safety.  Lawson Affidavit. POST is responsible for licensing peace officers, reserve peace officers, basic training instructors, curriculum and training centers in Missouri.  Lawson Affidavit. Police Academy graduates must be licensed by POST in order to be employed by defendant St. Louis County as police officers.  Lawson Affidavit.

St. Louis County police officers must maintain their POST certification and license to remain employed by St. Louis County.  POST certification requires 48 hours of continuing

education every three (3) years.  Lawson Affidavit.  Furthermore, St. Louis County requires that police officers receive sixteen (16) hours of mandatory in-service continuing education training annually.  Defendant County's Exhibit [33-M] - Departmental General Order 06-75/Department Employee Continuing Education and Training, dated March 15, 2006; Lawson Deposition, pg. 23; Lawson Affidavit.  The 16 hours annual St. Louis County training requirement includes the legal and technical aspects of law enforcement, including Constitutional law and the use of force. Lawson Affidavit.  The 16 hours annual St. Louis County training requirement may be used to meet the POST certification requirement.  Lawson Affidavit..

Defendant Crancer was employed by the Fenton Police Department from 1991 to 1995. Crancer Deposition, pgs. 12-14. In 1995 he was hired by St. Louis County as a probationary full-time police officer; and became a regular full-time police officer in 1996.  Crancer Deposition, pg. 14; Defendant County's Exhibit [35-L].

As of August 5, 2009 defendant Crancer had met the County's annual continuing education requirements.  Defendant County's Exhibit [35-B].  As of November, 2010 defendant Crancer had received 436 hours of continuing education since he graduated the Police Academy in 1991.  Defendant County's Exhibit [35-B] - Individual Continuing Education Training Records of Joseph A. Crancer; Lawson Deposition, pg. 22; Lawson Affidavit.

St. Louis County Police Department General Order 09-45 sets out the County's hiring process for police officers and the selection criteria for County police officers.  Defendant County's Exhibit [33-H] - Departmental General Order 09-45/Selection Process, dated February 11, 2009.  The hiring criteria includes requirements for citizenship, age, education and work experience.  Applicants must have no convictions, must qualify for a Missouri peace officer's license, must have a valid driver's license, must be in good financial standing, and must not have

6

a history of alcohol or controlled substance abuse. Defendant County's Exhibit [33-H]. St. Louis County police officers must also undergo a physical condition test, a written exam, an oral examination, background investigation, a polygraph examination, a psychological examination and must complete several rounds of interviews before being hired. Defendant County's Exhibit [33-H].

Defendant Crancer met the County's employment standards when he was hired in 1995. Defendant County's Exhibits [35-I, J, K, and L].

During the relevant time-period. while at the St. Louis County Justice Center, defendant Crancer was assigned to the Bureau of Security Services and subject to its supervision. Defendant County's Exhibit [33-5] - Deposition of Lt. Norm Campbell, pgs. 24-25, 27. Supervision of officers assigned to the Bureau of Security Services and working at the St. Louis County Justice Center is done daily. Campbell Deposition, pg. 33. Police officers assigned to the Bureau of Security Services are evaluated and job performance reviewed every six (6) months. These job performance reviews include any documented violations of Departmental General Orders. Campbell Deposition, pg. 35.

The St. Louis County Police Board (Police Board) is established by the St. Louis County Charter, Article IV, Section 4.270. Defendant County's Exhibit [33-C]; Defendant County's Exhibit [33-3] - Affidavit of Gregory G. Sansone. The Police Board oversees the operation of the St. Louis County Police Department. Sansone Affidavit. Pursuant to the St. Louis County Charter, Section 4.270, the Police Board is vested with authority to establish the policies of the St. Louis County Police Department. Defendant County's Exhibit [33-C] - Section 4.270.7(1); Sansone Affidavit.

The Police Board is the final policy maker for the St. Louis County Police Department. Defendant County's Exhibit [33-C] - Section 4.270.7; Sansone Affidavit.  The policies established by the Police Board govern the operation and conduct of the St. Louis County Police Department.  Defendant County's Exhibit [33-C], Section 4.270.7(1) and (5).  The Police Board has the power and duty to appoint a superintendent of police who has supervision, management, and control of, and be responsible to the Police Board for the operation of the police department and all police department personnel.  Defendant County's Exhibit [33-C] - Section 4.275.1.

The Police Board establishes the rules and regulations for the qualifications, conduct and discipline of St. Louis County Police Department employees, including police officers. Defendant County's Exhibit [33-C] - Section 4.270.7(5); Sansone Affidavit.

The Police Board cannot delegate its policy-making authority for the St. Louis County Police Department.  Sansone Affidavit.  The Police Board has never delegated its policy-making authority, including delegation to any police officer.  Sansone Affidavit.

The Board promulgates and establishes the St. Louis County Police Department's General Orders.  Sansone Affidavit.  General Order 07-29 is the St. Louis County Police Department's policy regarding the use of force.  Sansone Affidavit; Defendant County's Exhibit [33-D].  It sets out in detail specific regulations regarding the use of deadly force and nondeadly force. Defendant County's Exhibit [33-D].  It further sets out the review procedures when nondeadly force is used by a St. Louis County police officer.  Defendant County's Exhibit [33-D].  It further sets out the details a written police report must contain when a St. Louis County Police Officer uses deadly force or nondeadly force.  Defendant County's Exhibit [33-D].

A violation of General Order 07-29 by use of force beyond that allowed by the policy subjects a St. Louis County Police Officer to discipline, up to and including termination. Sansone Affidavit; Defendant County's Exhibit [33-1] - Affidavit of Col. Timothy E. Fitch.

General Order 07-81 is the St. Louis County Police Department's policy regarding investigative detentions, arrests, and search and seizures.  Sansone Affidavit; Defendant County's Exhibit [33-E]; Defendant County's Exhibit [33-F].  General Order 07-81 sets out the St. Louis County Police Department's policy regarding interactions between St. Louis County police officers and the community at large; including but not limited to, its policy forbidding such encounters based on discriminatory factors such as race, ethnicity, gender, sexual orientation, religious beliefs, disability, handicap or health-related conditions, or economic levels without probable cause or reasonable suspicion.  Defendant County's Exhibit [33-E].  General Order 07-53 sets out the St. Louis County Police Department's procedures involving search and seizure. Defendant County's Exhibit [33-F].

A violation of General Order 07-81 by the detention, arrest, search or seizure of a person without reasonable suspicion or probable cause pursuant to this policy subjects a St. Louis County police officer to discipline, up to and including, termination.  Sansone Affidavit; Fitch Affidavit.

Citizen complaints alleging misconduct against St. Louis County police officers are investigated through the Bureau of Professional Standards.  Fitch Affidavit; Defendant County's Exhibit [33-G] - General Order 04-05. General Order 04-05 sets out the procedures for investigations of any complaint (by anyone, including members of the public, co-employees, supervisors, etc.) regarding a St. Louis County police department employee (including police officers).  Defendant County's Exhibit [33-G].

9

After an investigation is completed, the complaint is classified as either: 1) exonerating the officer; 2) an unfounded complaint; 3) not sustaining the complaint; or 4) sustaining the complaint.  Fitch Affidavit; Defendant County's Exhibit [33-G].  If a complaint is sustained, the police officer is disciplined.  The range of discipline can range from a letter of reprimand put in his/her employment file to termination of employment.  Fitch Affidavit.

On or about April 2, 2010, the plaintiffs' attorney sent a demand letter and draft lawsuit to St. Louis County Police Chief Timothy Fitch regarding the alleged incident of August 5, 2009. St. Louis County did not conduct an investigation or supervisory review of defendant Crancer's alleged actions on August 5, 2009.  St. Louis County's Response to Plaintiffs' Statement of Additional Facts [41].  The plaintiffs did not file any type of written complaint regarding defendant Crancer's alleged actions of August 5, 2009 prior to the mailing of the demand letter and draft lawsuit on or about April 2, 2010 nor did they ever contact by phone anyone associated with the St. Louis County Police Department.  Defendant County's Exhibit [41-2] - Deposition of Kimberly Williams, pgs. 84-88; Defendant County's Exhibit [41-3] - Deposition of Lynda Jenkins, pgs. 71-72.

From at least 2007 until the relevant time-period, the St. Louis County Board of Police Commissioners has not received information or had knowledge of any St. Louis County police officer who made an investigative detention, arrest, search or seizure without reasonable suspicion or probable cause pursuant to General Order 07-81 and was not disciplined by the St. Louis County Police Department.  Sansone Affidavit.

St. Louis County Police Department General Orders 07-29, 07-81, 07-53, 04-05, , 06-75, and Department Special Order 09-317 were in use and effective on August 5, 2009.  Defendant County's Exhibit [33-4] - Affidavit of George Vaughn.[3]

Before setting out the Court's legal analysis, one significant matter must be addressed. Because the only dispositive motion filed and addressed by this Court is the instant one filed by defendant County, the Court cannot and will not make factual findings nor legal conclusions regarding the actions taken by the plaintiffs and/or defendant Crancer on August 5, 2009.  For purposes of this motion only, the Court will assume that defendant Scott violated the plaintiffs' civil rights under circumstances rising to the level of a constitutional violation and/or violation of state law.

The plaintiffs' claims grounded in municipal liability as argued in their responsive pleadings appear to be that the County is liable because 1) it fails to have a policy in place specifically addressing the use of force against minors; 2) it failed to train or supervise defendant Crancer in the use of force against minors; and 3) it failed to discipline defendant Crancer following the August 5, 2009 incident.  Plaintiffs appear to contend that these "failures" by the County demonstrate that it maintains unconstitutional policies and is deliberately indifferent to the plaintiffs' constitutional rights.

---

[3]Defendant County also submits Defendant County Exhibit [33-H] - General Order 09-45 regarding the County's hiring process for civilian employees as well as police officers. The County also goes to great lengths in its pleadings setting out the hiring process regarding police officers, specifically defendant Crancer.  However, the plaintiffs have not made any claim of inadequate hiring. Plaintiffs' First Amended Complaint [8]; Plaintiffs' Response to Defendant County's Statement of Uncontroverted Facts and Additional Uncontroverted Facts [36], pg. 9, ¶39.  The Court will consider any facts or arguments as to "inadequate hiring" only insofar as same relate to the claims arising under Count VI of the Plaintiffs' First Amended Complaint and/or the instant summary judgment motion.

Liability under §1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation, Monell v. New York City Department of Social Services, 436 U.S. 658, 690-94 (1978); Davison v. City of Minneapolis, Minnesota, 490 F.3d. 648 (8th Cir. 2007); Granda v. City of St. Louis, 472 F.3d. 565, 568 (8th Cir. 2007); Avalos v. City of Glenwood, 382 F.3d. 792, 802 (8th Cir. 2004), or is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage with the force of law." Granda, at 568 *quoting* Kuha v. City of Minnetonka, 365 F.3d. 590, 603 (8th Cir. 2003). Liability will not attach simply because the municipality employs the alleged tort-feasor. Monell, 436 U.S. at 694. Municipalities cannot be held liable on a *respondeat superior* theory under §1983 for the acts of their employees. Monell v. Soc. Services, 436 U.S. at 694; *see*, Connick v. Thompson, - U.S. - , 131 S.Ct. 1350, 1359 (2011)(*citing* Monell, *supra.*); Parrish v. Ball, 594 F.3d. 993, 997 (8th Cir. 2010)(*citing* Monell, *supra.*).

"Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." Russell v. Hennepin County, 420 F.3d. 841, 846 (8th Cir. 2005) *quoting* Angarita v. St. Louis County, 981 1537, 1546 (8th Cir. 1992)(*citing* St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988)). Although proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, *see,* Davison, *supra.*, *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985), "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Davison, *supra.*, *quoting* Praprotnik, 485 U.S. at 123; *see*, Angarita, at 1546.

There is a distinction between final policymaking authority and final decisionmaking authority. In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Supreme Court

supplemented its pronouncement that "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  Id., 475 U.S. at 483, n.12.  For example, a county sheriff may have the discretion to hire and fire sheriff department employees but this does not make him the county official responsible for establishing county employment policy.  This would be true even if the county sheriff exercised that discretion in an unconstitutional manner.  *See*, Davison, *supra. citing* Pembaur, 475 U.S. at 483, n.12.  Whether an official had final policymaking authority is a question of state law.  Pembaur, 475 U.S. at 483 (noting that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.").

"Claims against a municipality based on the acts of an individual officer or entity instead of a written policy or code have succeeded in circumstances where the action was not `subject to significant review' because the officer was in a `policy making position . . . represent[ing] the official policy of the municipality.'" Granda, at 568 *quoting* McGautha v. Jackson County Collections Dept., 36 F.3d. 53, 56 (8th Cir. 1994).  However, before a municipality can be held liable, there must be an unconstitutional act by the municipal employee or official.  Russell, at 846; Avalos, at 802.  A municipality is not liable under §1983 for the negligent acts of its employees/officials.  Russell, at 846 *citing* Daniels v. Williams, 474 U.S. 327, 330-31 (1986); *see also*, Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997).

"A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" Russell, at 847 *quoting* Hayes v. Faulkner County, 388 F.3d. 669, 674 (8th Cir. 2004)(*quoting* Pembaur, 475 U.S. at 483-84).  "A policy is

deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Russell, at 847 (citation omitted).

If the alleged constitutional violator is not a "final policymaker," then liability may be established by showing that the alleged misconduct was so persistent among the rank-and-file employees of the municipality as to constitute a "custom" with the "force of law". "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . as to [have] the force of law.'" Russell, at 849 *quoting* Harris v. City of Pagedale, 821 F.2d. 499, 504, n7 (8th Cir. 1987)(*quoting* Monell, 436 U.S. at 691).  In order to establish a constitutional violation resulting from a municipal custom, a plaintiff must show that his/her alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized.  Russell, at 849 *citing* Larson v. Miller, 76 F.3d. 1446, 1453 (8th Cir. 1996)(en banc).  Central to this standard is that the alleged misconduct must be "pervasive constitutional violations;" thus, liability for an unconstitutional custom or practice cannot arise from a single act.  McGautha, at 56-57 (citations omitted).

Plaintiffs contend that because the County does not have a specific, independent policy regarding the use of force against minors, it should be held liable for defendant Crancer's actions. It is difficult to discern exactly what the plaintiffs' argument is in support of its contention that the County's lack of a "force against minors" policy is in effect, the County's policy.  They argue this lack of a policy as part of their argument regarding lack of training, supervision, and/or discipline.  They simply point out that there is no policy as to the use of force against minors and that the County is liable because "[A]rresting and using force on a recently turned thirteen year-

14

old . . . is not the same as arresting and using force on an adult, much less a hardened adult felon - yet Defendant provides its police officers with no policy or training regarding the necessary difference in treatment of these dissimilar and distinct groups.".  Plaintiffs' Memorandum in Opposition [37], pg. 5. They further argue that "[j]ust as courts unhesitatingly have found deliberate indifference in municipalities' failure to train police officers regarding mentally disturbed persons **[citations omitted]**, Defendant St. Louis County's failure to train its officers – at all– regarding arresting and using force on minors (especially police officers assigned to the St. Louis County Justice Center, who are highly likely to come into contact with minors visiting relatives therein) directly caused the violations of Plaintiffs' constitutional rights in this case.". Plaintiffs' Memorandum in Opposition [37], pg. 6.

Other than highly prejudicial and subjective characterizations of the parties involved in the incident of August 5, 2009, the plaintiffs offer absolutely no factual or legal support for any of these contentions.

Firstly, the plaintiffs offer absolutely no evidence that even remotely casts defendant Crancer in the role of a "policy-maker" for the County, or that the County delegated its authority in any way to defendant Crancer to make policy on behalf of the St. Louis County Police Department.  Thus, they have failed to demonstrate that defendant Crancer, as a "policy-maker", made a deliberate choice to follow a course of action so inadequate as to be both obvious and likely to result in the alleged deprivation of the plaintiffs' constitutional rights, as to exhibit deliberate indifference on the part of the County.

Secondly, because defendant Crancer is not a "final policy-maker" for the St. Louis County Police Department, the plaintiffs have to show that his alleged misconduct of August 5, 2009 was so persistent among his fellow St. Louis County police officers as to constitute a

"custom" with the "force of law". Plaintiffs have to demonstrate that defendant Crancer's alleged misconduct on August 5, 2009 must be part of "pervasive constitutional violations" to import liability on the County.

All the plaintiffs have shown is a single incident in which they allege a single St. Louis County police officer improperly arrested the plaintiffs, and used excessive force against one minor. As a non-policymaking municipal employee, the plaintiffs have to show that defendant Crancer, as well as other St. Louis County police officers, were engaging in a "widespread and persistent pattern of unconstitutional misconduct" in arresting and/or using force against minors while detaining or arresting them.[4] They have presented absolutely no evidence of any prior incidents of St. Louis County police officers engaging in constitutional violations of minors, especially as to the use of force, prior to August 5, 2009, or that the County was on notice of any such violations or complaints of violations. They offer no evidence whatsoever that disputes the fact that this was a single incident of alleged constitutional misconduct against minors, not taken in furtherance of any known municipal policy, by a non-policymaking municipal employee (a St. Louis County police officer).

Plaintiffs have failed to show any material issues of fact as to the existence of clear and concrete policies regarding the use of force against all individuals, regardless of age, and/or the manner of arresting or detaining all individuals, regardless of age. At best, plaintiffs have shown a single incident in which a St. Louis County police officer (for purposes of this motion only) had arrested/detained and used force in violation of County policies. This single incident, without

---

[4]Plaintiffs' entire responsive pleading is dedicated to their contention regarding a lack of policy, training, supervision as to the arrest and/or use of force against minors by St. Louis County police officers. They do not in any manner address any issues involving the arrest of Ms. Jenkins, an adult.

more, does not establish deliberate indifference on the part of the County as to the constitutional rights of the plaintiffs.

As stated before, municipalities cannot be held liable on a *respondeat superior* theory under §1983 for the acts of their employees.  Monell v. Soc. Serv., 436 U.S. 658, 694 (1978); *see*, Connick v. Thompson, - U.S. -, 131 S.Ct. 1350, 1359 (2011)(*citing* Monell, *supra.*); Parrish v. Ball, 594 F.3d. 993, 997 (8th Cir. 2010)(*citing* Monell, *supra.*).  However, a local government may be held liable under §1983 for "inadequate training of its employees.".  City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); *see*, Connick v. Thompson, 131 S.Ct. at 1359; Parrish v. Ball, at 997 (*citing* City of Canton, *supra.*); Andrews v. Fowler, 98 F.3d. 1069, 1076-77 (8th Cir. 1996). However, "[A] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.".  Connick v. Thompson, 131 S.Ct. at 1359 *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985).

To establish a claim for failure-to-train, a plaintiff must prove that: 1) the defendant municipality's training procedures were inadequate; 2) the municipality was deliberately indifferent to the rights of its people in adopting the procedures, such that the municipality's failure-to-train reflects the municipality's deliberate or conscious choice; and 3) the alleged deficiency actually cause the harm.  Andrews v. Fowler, at 1076; M.W. v. City of Wentzville, 2011 WL 4014389, *6 *citing* Andrews v. Fowler, *supra.*  The plaintiff must establish that the municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.  Andrews v. Fowler, at 1076; *see*, Saddler v. Goodrich, 2009 WL 57458, *2 (E.D.Mo. January 9, 2008)(*citing* Andrews, *supra.*).  The plaintiff may demonstrate notice in one of two (2) ways: 1) show that the failure-to-train is so likely to result in a constitutional violation that the constitutional violation was patently obvious or 2) show that a pattern of misconduct

17

indicates the current training is insufficient to protect constitutional rights.  Parrish v. Ball, at 997 *citing* Andrews v. Fowler, at 1076; Larson by Larson v. Miller, 76 F.3d. 1446, 1454 (8th Cir. 1996); *see*,  Gilliam v. Southard, 2011 WL 2443761, *6 (E.D.Mo. June 15, 2011); Johnson v. Phillips, 2011 WL 539134, *3 (E.D.Mo. February 8, 2011); Gaulden v. City of Desloge, Missouri, 2009 WL 1035346, *9 (E.D.Mo. April 16, 2009).  Finally, the plaintiff must establish a direct causal link between the "inadequacy of the training procedures" and the alleged constitutional deprivation.  Johnson v. Phillips, 2011 WL 539134, *3 *citing* City of Canton, 489 U.S. at 391.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.".  C.I.D , through next friend, Dixon v. Boyd, III., 2010 WL 2402811, *9 (E.D.Mo. June 11, 2010) *citing* City of Canton, 489 U.S. at 390-91; *see*, Parrish v. Ball, at 997 *citing* City of Canton, 489 U.S. at 390-91. Thus, for liability to attach (as in the instant case), the identified deficiency in the defendant City's training program must be "closely related to the ultimate injury.".  City of Canton, 489 U.S. at 391.

Plaintiff appears to argue that this Court should assume that defendant Scott's training was inadequate because, at the time of the alleged incident, he improperly arrested the plaintiffs and used excessive force when arresting one of the minor plaintiffs. They then argue that defendant Crancer's actions demonstrate an "obvious need" to train St. Louis County police officers on how to interact with minors so as to not violate their constitutional rights. This conclusory argument is insufficient to successfully challenge the instant summary judgment motion.

Plaintiffs fail to dispute in any manner defendant Crancer's police education and training from 1991 (when he was graduated from the Academy) to August 5, 2009.  The undisputed

18

evidence shows that defendant Crancer was a graduate of the Police Academy, having received extensive training in numerous areas of Constitutional law, and in the use of force (both deadly and nondeadly force).  It is undisputed that since graduating from the Academy, defendant Crancer has consistently maintained his POST certification and received hundreds of hours of continuing law enforcement education. Defendant Crancer was subject to all of the written policies of the St. Louis County Police Department regarding arrest, detention, and the use of force; as well as subject to a range of disciplinary actions for violating said policies.  The Court finds no genuine material issue of fact that the County's training program is constitutionally adequate.  This training meets the constitutional standards for law enforcement training and furthermore, specifically addresses the circumstances under which a St. Louis County police officer may use nondeadly force.

Furthermore, there is no evidence that the County was on notice that its training program was inadequate.  Plaintiffs allege that the County "should have known" that since defendant Crancer, as well as all other St. Louis County police officers, were not specifically trained regarding arresting and using force on minors, that the risk of violating the constitutional rights of minors was "obvious."   They further appear to argue that this lack of a written policy on arresting and using force on minors, coupled with the County's failure to discipline defendant Crancer after the alleged August 5, 2009 incident, provided notice to the County that its training program was constitutionally deficient and demonstrates "deliberate indifference" on the part of the County.  The Court disagrees.

The Eighth Circuit has held that:

> . . . a written policy that is facially constitutional, but
> fails to give detailed guidance that might have averted
> a constitutional violation by an employee, does not
> itself give rise to municipal liability.  There is still potential

19

> for municipal liability based on a policy in that situation,
> but only where a city's inaction reflects a deliberate
> indifference to the constitutional rights of the citizenry,
> such that inadequate training or supervision actually
> represents the city's "policy."

Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d. 385, 392 (8th Cir. 2007); *see also*,

Connick v. Thompson, 131 S.Ct. at 1359-60.

Although a pattern of similar constitutional violations by untrained employees is

"ordinarily necessary" to demonstrate a municipality's "deliberate indifference" for purposes of a

failure-to-train claim, a plaintiff can rely on a "single-incident" theory that the constitutional

violation was the "obvious" consequence of inadequate training.  Connick v. Thompson, 131

S.Ct. at 1360-61 (citations omitted); *see also*, City of Canton, 489 U.S. at 390, n. 10.  However,

such a "single incident" theory of liability only arises "in a narrow range of circumstances".

These "circumstances" generally involve incidents arising from a total lack of training, not

simply an assertion that a municipal employee was not trained about "the specific scenario

related to the violation".  Connick v. Thompson, 131 S.Ct. at 1363-64.  The Supreme Court

rejects imposing liability based upon such a "nuance".  It notes that "[i]n virtually every instance

where a person has had his or her constitutional rights violated by a city employee, a §1983

plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate

incident."  Connick v. Thompson, 131 S.Ct. at 1363.

Furthermore, a plaintiff's "single incident" basis for demonstrating deliberate indifference

fails where the theory of liability is predicated on the **absence** of a particular training method as

advocated by the plaintiff.  Failure-to-train liability "is concerned with the substance of the

training, not the particular instructional format.  The statute does not provide plaintiffs or courts

*carte blanche* to micromanage local governments throughout the United States."  Connick v.

20

Thompson, 131 S.Ct. at 1363.  A plaintiff cannot establish municipal liability by "showing merely that additional training would have been helpful in making difficult decisions" because "proving that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not meet the deliberate indifference standard of proof.  Connick v. Thompson, 131 S.Ct. at 1363-64. The Supreme Court made it clear that proving a municipality itself actually caused a constitutional violation by failing to train the offending employee "presents `difficult problems of proof`, and [courts] must adhere to a `stringent standard of fault,' lest municipal liability under §1983 collapse into *respondeat superior*."  Connick v. Thompson, 131 S.Ct. at 1365 (citations omitted).

Here, the plaintiffs allege a single incident of a St. Louis County police officer allegedly violating the constitutional rights of minors while arresting minors, and in using force on one of the minors.  As stated before, the plaintiffs offer no evidence whatsoever of any prior incidents involving minors, similar to the alleged incident of August 5, 2009 or that the County was on notice of such similar incidents and chose to ignore them.  Plaintiffs have offered no evidence that would suggest that the County had notice that its training program was constitutionally deficient or there was a need to provide additional training to police officers on arresting/detaining and/or the use of force against minors.  Defendant County has established policies that specifically address the arrest, detainment, search of all individuals, as well as the use of force against all individuals.  There is nothing in the record which shows that it was unreasonable for the County to believe that its policies and training was insufficient to prevent the constitutional violations as alleged by the plaintiffs.  Viewing the facts in a light most

21

favorable to the plaintiff, the Court cannot find that the need for additional training was "patently obvious" or that the County was deliberately indifferent. [5]

As for the County's failure to discipline Crancer after the alleged incident, the plaintiffs fail to explain or offer any legal authority (within the Eighth Circuit) that such "inaction" demonstrates prior notice by the County that its training program was constitutionally deficient. Plaintiffs simply speculate that the County's failure to discipline defendant Crancer  is "tacit approval" of the arrest and use of force against the minor plaintiffs; however, such speculation fails to meet the required "stringent standard of fault" for imposing municipal liability under §1983.[6]

The County's training program for its police officers meets the standards for constitutional adequacy, Furthermore, the plaintiffs have failed to set forth sufficient evidence from which a reasonable jury could conclude that the single incident of police misconduct against the minor plaintiffs, as alleged by the plaintiffs, demonstrated such "patently obvious" inadequate training that the County was put on notice of the risk of such constitutional violations, and chose to be deliberately indifferent to such risk.  The Court will grant summary judgment to defendant

---

[5]Plaintiffs attempt to support their argument for different policies and/or different training based upon caselaw outside of the Eighth Circuit addressing the need to train law enforcement officers when dealing with mentally ill persons or persons having certain psychological issues such as obsessive-compulsion disorder.  The Court has reviewed these cases and finds same to be limited in scope to their facts, and inapplicable to the issues raised in the defendant County's summary judgment motion, or the plaintiffs' responsive pleadings.

[6]Again, plaintiffs attempt to support their argument based upon caselaw outside of the Eighth Circuit: Grandstaff v. City of Borger, 767 F.2d. 161 (5th Cir. 1985).  The Court has carefully reviewed Grandstaff, *supra.* and finds it extremely limited in scope to its facts, and its legal conclusions inapplicable to the current situation.  *See*, Coon v. Ledbetter, 780 F.2d., 1158, 1161-62 (5th Cir. 1986)(finding that the Grandstaff opinion to be a rare holding and limited to "equally extreme factual situations").

County on the plaintiffs' claim of failure-to-train and/or lack of policy regarding minors as contained in Count III of the plaintiffs' first amended petition.

Finally, plaintiffs have fail to sufficiently challenge the defendant County's summary judgment motion as to failure to supervise.  To establish the County's liability based on a failure to monitor or supervise, the plaintiffs must show that county officials had knowledge of prior incidents of police misconduct and deliberately failed to take action.  Andrews v. Fowler, 98 F.3d. 1069, 1075 (8th Cir. 1996); M.W. v. City of Wentzville, 2011 WL 4014389, *6 (E.D.Mo. September 9, 2011)(citing Andrews v. Fowler, supra.).  St. Louis County police officers assigned to the Bureau of Security Services are subject to daily supervision while on the job.  Furthermore, these police officers, as well as all other St. Louis County police officers, are subject to performance evaluations, including review of documented violations of Department General Orders, every six (6) months. Again, plaintiff have failed to present any evidence that the County had prior knowledge of "police misconduct"as alleged by the plaintiffs with regard to the arrest and use of force against minors, and deliberately failed to take action.  Thus, there is no material issue of fact in dispute that there were no prior incidents of police misconduct similar to the one alleged in the plaintiffs' first amended petition, and defendant County is entitled to summary judgment as a matter of law.  The Court will grant summary judgment to the defendant County on any claim for failure to supervise or monitor that the plaintiffs may be asserting under Count III of their first amended petition.

As noted before, the plaintiffs' responsive pleadings focus entirely on their contention that the County should be held liable (i.e., summary judgment denied) in connection with defendant Crancer's actions towards the minor plaintiffs.  Count III is brought by all the plaintiffs, including adult plaintiff Jenkins, and does not distinguish the claims contained therein

23

between the adult plaintiff (Jenkins) and the minor plaintiffs (D.D. and K.D.).  However, assuming that the plaintiffs are also seeking to challenge the instant summary judgment motion as to Count III on behalf of plaintiff Jenkins, the Court's findings of fact and conclusions of law are equally applicable in connection with plaintiff Jenkins.

Thus, summary judgment for defendant County is proper on the plaintiffs' lack of policy, failure-to-train, and failure-to-supervise/monitor claims as contained in Count III of the plaintiffs' first amended petition.

Dated this 22nd  day of November, 2011.


_____
UNITED STATES DISTRICT JUDGE

24